# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 MAR 29  A 10: 09

CLERK'S OFFICE
AT

CHRISTOPHER COX,              *

     Plaintiff,           *

v.                       **Case No.: GJH-16-257**

                       *

ROBUSTIANO BARRERA, *et al.,*

                       *

     Defendants.         

                       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Christopher Cox filed this civil rights action against Defendants Dr. Barrera, R.N.P. Beverly McLaughlin, and R.N. Monica.[1] ECF No. 1. Defendant McLaughlin filed a Motion to Dismiss or for Summary Judgment. ECF No. 9. Plaintiff opposes the Motion to Dismiss or for Summary Judgment. ECF No. 13. A hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons set forth below, summary judgment shall be granted, in part, and denied, in part. Defendant McLaughlin has also moved to seal medical records submitted as an exhibit in support of the dispositive motion, ECF No. 10, and that motion is granted.

## I.   BACKGROUND[2]

Plaintiff is an inmate committed to the custody of the Maryland Division of Correction and, at all times relevant to the Complaint, was confined at Western Correctional Institution

---

[1] Upon a review of the record, it is apparent that Plaintiff erroneously denoted Dr. Robustiano Barrera, M.D., as "Dr. Ravera" in the pleadings, and also that Defendant "Monica" is Monica Wilt, R.N. The Clerk will be directed to correct the docket as to those Defendants.

[2] As this Memorandum Opinion addresses Defendant's Motion for Summary Judgment, all facts stated herein are taken from the record as a whole, but viewed in the light most favorable to Plaintiff, as the non-moving party.

(WCI) in Cumberland, Maryland.[3] Plaintiff alleges that he was seen by R.N.P. McLaughlin on October 23, 2015, and that she ordered his medical supplies and medicine. ECF No. 1-2 at 4. During his appointment, Plaintiff asked McLaughlin for his diagnosis and did not receive a response. *Id.* On December 21, 2015, Plaintiff saw McLaughlin again for a chronic care visit. *Id.* During that visit, he states that "all meds were renewed." *Id.* Plaintiff again asked for his diagnosis, and McLaughlin told him she would "have to look." *Id.*

On December 23, 2015, Plaintiff was seen by Dr. Robustiano Barrera who did a strength test and, at Plaintiff's request, put in a referral for Plaintiff to receive physical therapy. Plaintiff asked Dr. Barrera "the name of [his] diagnosis" and asked why he still required diapers and catheters. Dr. Barrera told him "I don't know," and then said it was due to Plaintiff's injury. ECF No. 1-2 at 4–5. Plaintiff explained that his injury was "new from the last time" and that Dr. Barrera ignored his assertion. Plaintiff asserts that McLaughlin and Dr. Barrera have refused to "research" whether his incontinence was healing or getting worse. Plaintiff also states that at the time he saw Dr. Barrera, he had an infection. ECF No. 1-2 at 5.

Plaintiff states that he has filed between 30–50 administrative remedy procedure requests ("ARPs") with respect to his medical and safety needs. ECF No. 13 at 1. On January 6, 2016, Plaintiff was interviewed by Monica Wilt, R.N., in reference to an ARP he filed regarding his December 23, 2015 appointment with Dr. Barrera. ECF No. 1-2 at 5. Plaintiff claims that Wilt was "very unprofessional" and that he filed another ARP for "disrespect, unprofessionalism, and neglect." ECF No. 1-2 at 5. On January 20, 2016, Plaintiff states that he received a notice signed by K. Martin, R.N., and Dr. Barrera discontinuing an order for his use of a wheelchair. *Id.* The

---

[3] Plaintiff was transferred to North Branch Correctional Institution in Cumberland, Maryland while this case has been pending.

2

notice was allegedly dated January 7, 2016. *Id.* Plaintiff claims that his wheelchair was discontinued as retaliation for the ARPs he filed against the medical staff. ECF No. 1-2 at 5.

In response to the Complaint, Defendant McLaughlin provides relevant medical records and an affidavit from Dr. Barrera concerning Plaintiff's medical condition. Plaintiff's medical history includes multiple gunshot wounds to his back which occurred in 2014, and an injury to the T-10 vertebra in his back, resulting from a 2010 motor vehicle accident. ECF No. 9-5 at 2. Plaintiff's gunshot wounds required the removal of the lower lobe of his lung, open thoracic surgery, craniotomy, and a tracheostomy, as well confinement to an intensive care unit. ECF No. 10-2 at 2, 13. The injury to Plaintiff's thoracic spine (T10) resulted in partial paralysis of his left leg (monoparalysis). *Id.* at 2. As a result of these injuries, Plaintiff is incontinent and is provided catheter supplies, biohazard bags, and adult diapers. ECF No. 9-5 at 3.

Plaintiff is also given a cane to assist him with walking, but on October 23, 2015, when Plaintiff was seen by McLaughlin, he was allegedly not using the cane. ECF No. 10-2 at 2. Plaintiff was also being provided a wheelchair for longer distances, *see id.* at 13, but Dr. Barrera reassessed Plaintiff's need for a wheelchair on December 23, 2015. ECF No. 9-5 at 3. This reassessment occurred after it was noted that Plaintiff walked independently with a cane on flat surfaces. *Id.* While spasticity was noted in Plaintiff's right lower leg, it was also noted that Plaintiff had the ability to manipulate that leg and walk. *Id.* at 3–4. Dr. Barrera's assessment was that Plaintiff was able to walk short distances, but that he would require a wheelchair for distances of more than fifty yards. *Id.* at 4. Despite this assessment, Plaintiff's chart was updated on January 7, 2016, by Kimberly Martin, R.N., discontinuing his medical assignment for a wheelchair for long distances. *Id.* Dr. Barrera states in his affidavit that he did not discontinue the medical assignment for a wheelchair despite the appearance of his name on the notice, and

3

that he was unaware of any ARPs filed by Plaintiff prior to this change in the assignment of a wheelchair. *Id.*

On January 12, 2016, Plaintiff was transferred from WCI to North Branch Correctional Institution. ECF No. 9-5 at 4. Dr. Barrera notes that Plaintiff was placed in segregated housing on February 18, 2016, making him ineligible for a medically-assigned wheelchair for distances. ECF No. 9-5 at 4–5. On May 16, 2016, Plaintiff was removed from segregated housing and placed into "Max II" security. *Id.* Dr. Barrera states that as a Max II inmate, Plaintiff is not allowed to leave his cell block, which also means he is ineligible to receive a medically assigned wheelchair for distances. *Id.* In addition, Dr. Barrera notes that Plaintiff has not raised any complaints regarding the discontinuation of his wheelchair in any sick call requests or administrative complaints. *Id.*

Following the discontinuation of Plaintiff's wheelchair assignment, he has allegedly missed two physical therapy appointments (February 23 and 25, 2016) and one chronic care appointment (March 4, 2016). ECF No. 9-5 at 5. Plaintiff attended physical therapy appointments on February 9 and 20, 2016, and March 7 and 8, 2016. *Id.* During those appointments, Plaintiff was able to complete the exercises and there was no indication Plaintiff required a wheelchair. *Id.* Dr. Barrera's review of Plaintiff's medical records provided no indication that Plaintiff asked for a diagnosis. ECF No. 9-5 at 3. Plaintiff filed the instant Complaint against Defendants in this Court on January 28, 2016.

## II. STANDARD OF REVIEW

Defendant McLaughlin has moved to dismiss or, in the alternative, for summary judgment. ECF No. 9. A motion styled "in the alternative" implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v.*

4

*Montgomery County,* 788 F.Supp.2d 431, 436–37 (D. Md. 2011). If the Court considers matters

outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56,"

and "[a]ll parties must be given a reasonable opportunity to present all the material that is

pertinent to the motion." Fed. R. Civ. P. 12(d). Here, the Court considers evidence outside the

pleadings, namely Plaintiff's medical records and the Barrera affidavit, ECF No. 10; thus, it will

treat Defendant's dispositive motion as one for summary judgment.

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which

provides in part: "[t]he court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat

the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). "By its very

terms, this standard provides that the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Id.* Thus, "[a] mere scintilla of

evidence in support of the nonmovant's position will not defeat a motion for summary

judgment." *Detrick v. Panalpina, Inc.,* 108 F.3d 529, 536 (4th Cir. 1997).

"A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,

Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw

all inferences in [his] favor without weighing the evidence or assessing the witnesses'

credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir. 2002).

The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## III.    ANALYSIS

### A. Eighth Amendment Claim[4]

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison

---

[4] Plaintiff Cox does not plead his claims under particular legal headings. However, as Cox is proceeding *pro se*, the Court will construe his Complaint liberally and analyze the claims as ones under the Eighth Amendment and First Amendment retaliation. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003).

staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be "serious." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (noting that there is no expectation that prisoners will be provided with "unqualified access to health care"). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may nonetheless avoid liability "if [he or she] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (discussing that the focus must be on precautions actually taken in light of inmate's suicide risk, not all those that could have been taken).

Plaintiff's claim alleging he has been denied a diagnosis is without merit. While it would be desirable to have medical staff explain the reason for Plaintiff's disability, failure to provide that which is merely desirable does not state an Eighth Amendment claim where, as here, that

7

failure has not inflicted unnecessary suffering. *See Wilson v. Danville Adult Det. Ctr.*, No.

CIV.A. 7:06CV00619, 2006 WL 3421844, at \*2 (W.D. Va. Nov. 27, 2006) (citing *Bowring v.*

*Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)) (dismissing Eighth Amendment claim where inmate

and medical personnel merely disagreed about diagnosis and course of treatment). Plaintiff's

specific complaint appears to be that he still does not know why he remains incontinent. ECF

No. 13. Whether or not Defendants have verbally informed him, from the record it appears that

the injury to Plaintiff's spine is the reason for the incontinence. *See* ECF No. 14; *see also*

http://www.nafc.org/spinal-cord/ ("A spinal cord injury may interrupt communication between

the nerves in the spinal cord that control bladder and bowel function and the brain, causing

incontinence."). Moreover, as relevant to the Court's determination here, the undisputed

evidence establishes Plaintiff is provided treatment for the injury, and medical staff are otherwise

responsive to his medical needs. Defendant McLaughlin is therefore entitled to summary

judgment on the Eighth Amendment claim with regard to the failure to provide a diagnosis.

### B. Retaliation Claim

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the

retaliatory act was taken in response to the exercise of a constitutionally protected right or that

the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Here, Plaintiff

appears to assert a claim for unlawful retaliation for exercising his First Amendment rights by

filing one or more ARPs against Defendants. *See Hendrick v. Bishop*, No. CV TDC-14-2544,

2016 WL 1060212, at \*5 (D. Md. Mar. 15, 2016) (recognizing retaliation claim by inmate where

inmate filed multiple ARPs against correctional officers and was reassigned to a double cell

shortly thereafter); *see also Burton v. Livingston*, 791 F.2d 97, 100–01 (8th Cir. 1986) (finding

that "complaint that a prison guard, without provocation, and for the apparent purpose of

8

retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" was sufficient to state claim). To prove a First Amendment retaliation claim, Plaintiff must show that (1) he engaged in protected First Amendment activity; (2) the defendants took some action that adversely affected his First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendants' conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

Here, it is undisputed that Plaintiff filed an ARP against medical staff on or about December 23, 2015. *See* ECF No. 9-5 ¶ 10. It is also not contested that on or about January 7, 2016, Plaintiff's medical assignment for a wheelchair was discontinued. *Id.* ¶ 9; *see Hendrick*, 2016 WL 1060212, at *8 (noting that a causal connection may be established with "circumstantial evidence, such as evidence that the defendants were aware of the First Amendment activity and that the retaliation took place within some 'temporary proximity' of that activity."). In his Opposition, Plaintiff disputes Defendant's assertion that he does not require a wheelchair for long distances because he is assigned to "Max II." ECF No. 13 at 3. Plaintiff notes that he is still required to go out on medical appointments and court dates which require distance walking. *Id.* Additionally, the record before the Court does not provide a clear indication that the discontinuation of Plaintiff's medically assigned wheelchair was based on medical considerations. Dr. Barrera indicates that he assessed Plaintiff and concluded that he needed a wheelchair for distances longer than 50 feet. ECF No. 9-5. Despite Dr. Barrera's medical opinion, it was determined that the wheelchair would no longer be provided to Cox.

Although McLaughlin is not alleged to have engaged in any improper conduct with regard to Plaintiff's wheelchair assignment, and Dr. Barrera states that he was unaware of the discontinuation and did not participate in the decision, Plaintiff's claim that his wheelchair was

9

rescinded for improper reasons cannot be dismissed on this record. In light of the discontinuation being contrary to Dr. Barrera's opinion that Plaintiff needed the wheelchair for longer distances, and Plaintiff's continuing need to attend court dates and medical appointments — the timing of the order rescinding Plaintiff's wheelchair assignment, issued one day after Plaintiff filed an ARP complaining about medical staff, and 11 months prior to the date Plaintiff's wheelchair assignment was due to expire, *see* ECF No. 9-5 at 3, lends credence to Plaintiff's claim that the action was retaliatory. Accordingly, viewing the evidence in the light most favorable to Plaintiff, summary judgment shall be denied as to the retaliation claim.

Plaintiff will be permitted an opportunity to file a Motion to Appoint Counsel so that counsel can assist with supplementing the Complaint to (1) include parties, which may include either medical or correctional staff responsible for discontinuing the order for long-distance wheelchair use; (2) further explain the connection between Plaintiff's filing of grievances and the staff's decision to discontinue his wheelchair; and (3) describe how that decision has impacted Plaintiff's daily life. In the interim, a liberal construction of the Complaint indicates that the defendant Plaintiff erroneously denotes as "Dr. Ravera" in the caption is actually Dr. Robustiano Barrera. The Clerk is thus directed to correct the docket to reflect that correction, and counsel for Defendant McLaughlin is instructed to indicate whether service is accepted as to Dr. Barrera. Upon submission of the supplemental Complaint, and following service on any new parties, Defendants will be provided an opportunity to more fully explain the basis of the decision to discontinue Plaintiff's wheelchair and brief the retaliation issue as discussed above.

## IV.   CONCLUSION

Summary judgment shall be granted in favor of Defendant McLaughlin with respect to Plaintiff's Eighth Amendment claim. Summary judgment is denied with respect to Plaintiff's

retaliation claim. The Complaint shall be dismissed as to Defendant Monica Wilt, as the

Complaint does not allege anything beyond "unprofessional" conduct on Wilt's part. A separate

Order follows.

March **29** , 2017

GEORGE J. HAZEL
United States District Judge

11